## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **STANLEY W. ELLSWICK,** | } | |
| | } | |
| **Appellant,** | } | |
| **v.** | } | |
| | } | **Case No.:  1:16-cv-01959-MHH** |
| **QUANTUM3 GROUP, LLC,** | } | |
| | } | |
| **Appellee.** | } | |

## MEMORANDUM OPINION AND ORDER

Stanley W. Ellswick appeals from the Bankruptcy Court's June 24, 2016 order denying his motion to compel arbitration of his adversary proceeding and the Bankruptcy Court's November 23, 2016 order granting appellee Quantum3 Group, LLC's motion to dismiss his adversary proceeding.  (*See* Doc. 1).  For the reasons discussed below, the Court affirms the order denying Mr. Ellswick's motion to compel arbitration, and the Court vacates the order granting Quantum's motion to dismiss and remands this matter for further proceedings in the Bankruptcy Court.

## I. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over Mr. Ellswick's appeal under 28 U.S.C. § 158(a)(1).  Section 158(a)(1) states: "The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy

judges under section 157 of this title."

When it reviews final decisions of a bankruptcy court, the district court functions as an appellate court. *In re Piper Aircraft Corp.*, 362 F.3d 736, 738 (11th Cir. 2004). "In reviewing a bankruptcy court judgment as an appellate court, the district court reviews the bankruptcy court's legal conclusions *de novo*." *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996). The Court reviews a ruling on a motion to dismiss *de novo*. *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1296-97 (11th Cir. 2015). Likewise, the Court reviews the denial of a motion to compel arbitration *de novo*. *Parm v. Nat'l Bank of California*, 835 F.3d 1331, 1334 (11th Cir. 2016); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015).

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

### A. Quantum's Proof of Claim in Mr. Ellswick's Bankruptcy Case and Mr. Ellswick's First Request for Arbitration

On July 31, 2015, Mr. Ellswick filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Alabama. (Doc. 4, p. 8). On September 4, 2015, Quantum filed a proof of claim in Mr. Ellswick's bankruptcy case. (Doc. 4, p. 8). Quantum claimed $592.50 pursuant to a payday loan. (Doc. 3-15, p. 1). The "Documents" section in the proof of claim provided the following instructions to Quantum:

Attach redacted copies of any documents that show the debt exists and

a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

(Doc. 3-15, p. 2, ¶ 7).[1]

Quantum attached to its proof of claim a form entitled "Bankruptcy Rule 3001(c)(3)(A) Statement of Account Information." (Doc. 3-15, p. 4). The form accurately provided information that Federal Rule of Bankruptcy Procedure 3001(c)(3)(A) requires to be disclosed with a proof of claim for "an open-end or revolving" account, "such as an agreement underlying the issuance of a credit card." Fed. R. Bankr. P. 3001 advisory committee's note.[2] But, the debt

---

[1] Quantum argues that "while Ellswick repeatedly refers to 'the Rule 3001(c)(3)(A) disclosure form,' there is no such thing as a 'Rule 3001(c)(3)(A) disclosure form.'" (Doc. 8, p. 19). At best, Quantum is splitting hairs. Rule 3001(c)(3)(A) requires the submission of certain information, namely the identity of the entity from whom the creditor purchased the account, the name of the entity to whom the debt was owed at the time of the last transaction on the account, the dates of the last transaction and payment on the account, and the date on which the account was charged to profit and loss. The United States Bankruptcy Court for the Northern District of Alabama's proof of claim form expressly calls on creditors to provide "documents" mandated "by FRBP 3001(c) for claims based on an open-end [] consumer credit agreement." (Doc. 3-15, p. 2, ¶ 7). In addition, the document that Quantum attached to its proof of claim form is captioned "Bankruptcy Rule 3001(c)(3)(A) Statement of Account Information" and the document clearly is a form, complete with standard form language. Quantum's argument literally elevates form over substance.

[2] "(A) When a claim is based on an open-end or revolving consumer credit agreement—except one for which a security interest is claimed in the debtor's real property—a statement

underlying Quantum's proof of claim was neither open-end nor revolving. (Doc. 3-18, ¶ 10). Rather, the debt was a "closed-end" payday loan. (Doc. 3-18, ¶ 12). The Bankruptcy Rules do not prohibit creditors from providing the information required for an open-end debt with a proof of claim for a closed-end debt. But because the debt Mr. Ellswick owes to Quantum is closed-end, under Rule 3001(c)(1), Quantum was required to attach to its proof of claim a copy of the written agreement underlying the debt.[3] Quantum did not do so. (Doc. 3-18, ¶ 11).

Mr. Ellswick filed an objection to Quantum's claim. (Doc. 3-16). In the objection, Mr. Ellswick argued that the underlying debt was void under state law and the federal Truth in Lending Act. (Doc. 3-16, p. 1). Mr. Ellswick alleged that Quantum violated Ala. Code § 5-18A-13(k) because the loan contract "state[d] in the Truth in Lending Disclosure that debtor was giving creditor a security interest

shall be filed with the proof of claim, including all of the following information that applies to the account:

> (i) the name of the entity from whom the creditor purchased the account;
> (ii) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;
> (iii) the date of an account holder's last transaction;
> (iv) the date of the last payment on the account; and
> (v) the date on which the account was charged to profit and loss.

Fed. R. Bankr. P. 3001(c)(3)(A).

[3] "Except for a [claim based on an open-end or revolving consumer credit agreement], when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Fed. R. Bankr. P 3001(c)(1).

in debtor's check." (Doc. 3-16, p. 1, ¶ 1.a).[4] Mr. Ellswick alleged that the state law violation rendered the debt void because "Alabama Supreme Court precedent makes it clear that loans in violation of a regulatory act . . . are void." (Doc. 3-16, p. 1) (citing *Marx v. Lining*, 165 So. 207, 209-10 (Ala. 1935)). Mr. Ellswick alleged that "additional violations making the contract void also makes said contract in violation of [the federal Truth in Lending Act]." (Doc. 3-16, p. 1).

The contract for the payday loan contains a "Dispute Resolution" provision which states that the parties to the loan must resolve disputes between them either in small claims court or in arbitration. (Doc. 3-27, p. 5). In conjunction with his objection to the proof of claim, Mr. Ellswick cited the arbitration provision in the payday loan contract and asked the Bankruptcy Court to stay the objection to the claim pending arbitration. (Doc. 3-16, p. 1). The Bankruptcy Court granted Mr. Ellswick's request. (Doc. 3-21). After arbitration of Mr. Ellswick's objection, the arbitrator voided the debt (Doc. 3-33) and Quantum withdrew its claim (Doc. 3-36).

### B. Mr. Ellswick's Adversary Proceeding

After objecting to Quantum's proof of claim, Mr. Ellswick filed an Adversary Proceeding, AP No. 15-40048-JJR ("AP"), in the Bankruptcy Court.

---

[4] Ala. Code § 5-18A-13(k) provides that "[n]o licensee shall require a customer to provide security for the transaction or require the customer to provide a guaranty from another person."

(Doc. 3-18).[5]  Mr. Ellswick alleged in the AP that Quantum violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), by attaching to its proof of claim a "Bankruptcy Rule 3001(c)(3)(A) Statement of Account Information" form, a form which would indicate that "the underlying debt was based on an open[-end] account."  (Doc. 3-18, p. 3, ¶ 10).  An open-end account is, for example, a credit card charge account.  (Doc. 3-7, p. 2).

Mr. Ellswick alleged that the underlying debt actually "was a closed-end payday loan."  (Doc. 3-18, p. 3, ¶ 12).  Mr. Ellswick alleged that Quantum's assertion through its filing of a Rule 3001(c)(3)(A) form with its proof of claim that the underlying debt was based on an open-end account was a false representation to the Bankruptcy Court, and "the FDCPA applies 'even when the audience for such conduct is someone other than the consumer.'"  (Doc. 3-18, p. 3, ¶ 17) (quoting *Miljkovic*, 791 F.3d at 1297).  Mr. Ellswick alleged that "[b]y representing to the Court that Quantum was collecting on an open account, Quantum violated 15 U.S.C. § 1692(e)," because that section of the FDCPA "prohibits the false representation of the character of a debt."  (Doc. 3-18, p. 3, ¶ 14).  In addition, Mr. Ellswick alleged that the misrepresentation violated § 1692e(10), "which prohibits '[t]he use of any false representation or deceptive means to collect or attempt to collect any debt,'" and § 1692f, "which provides: 'A

---

[5] Mr. Ellswick filed the AP on October 14, 2015.  (Doc. 3-18, p. 4).

debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.'" (Doc. 3-18, p. 3, ¶¶ 15-16). Furthermore, Mr. Ellswick alleged that because the underlying debt was a closed-end payday loan, under Bankruptcy Rule 3001, Quantum had to file a copy of the contract between Quantum and himself, that Quantum did not do so, and that Quantum's failure to do so was a sanctionable offense under Rule 3001. (Doc. 3-18, p. 2, ¶¶ 11-12).

### C. Quantum's Motion to Dismiss the AP

On November 16, 2015, Quantum filed a motion to dismiss the AP for failure to state a claim upon which relief may be granted under the FDCPA. (Doc. 3-22, p. 7). Quantum argued that it did not make a false representation and that even if attaching the Rule 3001(c)(3)(A) form to the proof of claim was a false representation of the character of the debt, the company cannot be held liable under the FDCPA because the proof of claim is not misleading or deceptive. (Doc. 3-22, p. 8). Quantum maintained that all of the information it provided in the Rule 3001(c)(3)(A) form was true and that Mr. Ellswick could not have been misled as to the character of the debt because he was in possession of the underlying contract for closed-end debt. (Doc. 3-22, p. 8). Quantum also contended that Mr. Ellswick failed to allege any conduct amounting to unfair or unconscionable debt collection practices. (Doc. 3-22, p. 9).

### D. Mr. Ellswick's Motion to Compel Arbitration of the AP

On February 22, 2016, Mr. Ellswick filed a motion to compel arbitration of the AP pursuant to the dispute resolution provision in the written credit agreement. (*See* Doc. 3-27, p. 5). Quantum opposed the motion. (Doc. 3-28). On June 24, 2016, the Bankruptcy Court denied the motion to compel arbitration because Mr. Ellswick waived his right to arbitration, and the AP was a core proceeding that must be decided by a bankruptcy court. (Doc. 3-32, pp. 5, 7). The Bankruptcy Court held that Mr. Ellswick waived his right to arbitration because he participated in substantial litigation activities before moving to compel arbitration, leading Quantum to expend significant resources in litigation. (Doc. 3-32, p. 5).[6] The Bankruptcy Court held, moreover, that it could not compel arbitration because claims in the AP could not exist apart from the bankruptcy case, such that allowing an arbitrator to decide the AP claims "would create an inherent conflict with the [Bankruptcy] Code and [Federal] Rules [of Bankruptcy Procedure] . . . ." (Doc. 3-32, p. 7).

### E. Order Dismissing the AP

On November 23, 2016, the Bankruptcy Court granted Quantum's motion to dismiss. (Doc. 3-7). The Bankruptcy Court held that Mr. Ellswick failed to allege

---

[6] Mr. Ellswick's litigation activities were filing the AP in court, opposing Quantum's motion to dismiss on the merits, briefing the motion to dismiss, participating in a hearing on the motion to dismiss, and participating in a status conference where contested issues were in play. (Doc. 3-32, p. 5).

how the form attached to Quantum's proof of claim misled, confused, or deceived him.  In reaching its decision, the Bankruptcy Court applied the standard of a reasonable but least sophisticated consumer under § 1692e of the FDCPA.  (Doc. 3-7, pp. 8-9).  The bankruptcy judge explained:

> [Mr.] Ellswick must resort to arguing that by mentioning Rule 3001(c)(3)(A) in the heading of its proof of claim disclosure statement, but without mention of what that Rule is all about, and making disclosures required for open-end and revolving transactions—but not disallowed for closed-end obligations—Quantum made a technically, albeit implicit, false representation that [Mr.] Ellswick's obligation was [open-end], and that such an implicit representation would qualify as a "representation" under the FDCPA. . . . This court disagrees, and concludes that the act of attaching to a bankruptcy proof of claim accurate disclosures required for open-end and revolving obligations was not a "false representation" under the FDCPA when the obligation was actually closed-end.

(Doc. 3-7, p. 11).

### F. Mr. Ellswick's Appeal

On December 7, 2016, Mr. Ellswick appealed from the Bankruptcy Court's order granting Quantum's motion to dismiss the AP and the Bankruptcy Court's order denying his motion to compel arbitration.  (Doc. 1-1).  The parties have submitted their briefs, and the issues on appeal are ripe for resolution.  (Docs. 4, 8, 9).

## III. ANALYSIS

### A. Motion to Dismiss Mr. Ellswick's Adversary Proceeding

In dismissing Mr. Ellswick's adversary proceeding, the Bankruptcy Court

held that "the act of attaching to a bankruptcy proof of claim accurate disclosures required for open-end and revolving obligations was not a 'false representation' under the FDCPA when the obligation was actually closed-end." (Doc. 3-7, p. 11). The Bankruptcy Court adopted Quantum's argument that "Quantum's proof of claim 'does not misrepresent the nature or effect' of the underlying debt," (Doc. 3-7, p. 6) (quoting *Miljkovic*, 791 F.3d at 1306), and Quantum's assertion that "the proof of claim merely represents that Quantum is the agent of Sadino, LLC, to whom [Mr.] Ellswick owes a valid debt" (Doc. 3-7, p. 6). At the urging of Quantum, relying on authority from the Seventh Circuit Court of Appeals, the Bankruptcy Court rejected Mr. Ellswick's argument that he could allege a claim under the FDCPA merely by identifying a false representation. (Doc. 3-7, pp. 8-9, 11, & n.3; Doc. 3-24, pp. 5-7).[7] Applying the least sophisticated consumer standard, the Bankruptcy Court held that Mr. Ellswick's AP was inadequate because he alleged nothing about how he was "misled or confused for purposes of §1692e(2)." (Doc. 3-7, p. 8). The Bankruptcy Court reasoned that because the bankruptcy rules do not prohibit submission of the form for an open-end account with a proof of claim for a closed-end account and because the information that the creditor supplied on the open-end form was accurate, the proof of claim was not false. (Doc. 3-7, p. 11).

---

[7] Mr. Ellswick also relied on precedent from the Seventh Circuit Court of Appeals. (Doc. 3-24, pp. 3-4) (relying on *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004)).

Mr. Ellswick argues that the distinct attachments to proofs of claim --
contracts for closed-end accounts like his payday loan and Rule 3001(c)(3)(A)
forms for open-end accounts like credit card accounts -- serve as traffic signals for
the bankruptcy trustee who, pursuant to 11 U.S.C. § 1302(b)(1), must "examine
proofs of claims and object to the allowance of any claim that is improper."  Mr.
Ellswick challenged Quantum's closed-end claim as improper because it is void
under Alabama law.  (Doc. 3-16, p. 1; Doc. 3-7, p. 3).  Mr. Ellswick contends that
the act of attaching a Rule 3001 form to and omitting from the proof of claim filing
the loan contract is a false representation of the character of the debt which violates
§ 1692e(2)(A).  Therefore, Mr. Ellswick argues, the Bankruptcy Court erred when
it dismissed his adversary proceeding.

Because the viability of Mr. Ellswick's FDCPA claim turns on an
interpretation of FDCPA § 1692e, the Court begins its analysis there.

> In enacting the FDCPA, Congress sought "to eliminate abusive debt
> collection practices by debt collectors, to insure that those debt
> collectors who refrain from using abusive debt collection practices are
> not competitively disadvantaged, and to promote consistent State
> action to protect consumers against debt collection abuses."  15
> U.S.C. § 1692(e); *Brown v. Budget Rent–A–Car Syss., Inc.,* 119 F.3d
> 922, 924 (11th Cir.1997) (per curiam).  Accordingly, the FDCPA
> prohibits debt collectors from using "any false, deceptive, or
> misleading representation or means in connection with the collection
> of any debt" as well as the use of "unfair or unconscionable" means of
> collection.  15 U.S.C. §§ 1692e and 1692f.  The FDCPA does not
> ordinarily require proof of intentional violation and, as a result, is
> described by some as a strict liability statute.  *See* 15 U.S.C. § 1692k;

> *Ellis v. Solomon and Solomon, P.C.,* 591 F.3d 130, 135 (2d Cir. 2010).

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010). The FDCPA holds liable for damages "any debt collector who fails to comply with any provision of [the FDCPA]." 15 U.S.C. § 1692k(a).

As the Eleventh Circuit stated in *LeBlanc*, § 1692e prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt" and provides a non-exhaustive list of conduct that constitutes a violation. *LeBlanc*, 601 F.3d at 1193. Included in types of conduct that § 1692e expressly prohibits is "[t]he false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect . . . any debt."[8] The "gist of § 1692e [is] a requirement that any aspect of a debt collector's communication—whether explicit or implied—that has the purpose or effect of making a debtor more likely to respond is, in fact, true." *LeBlanc*, 601 F.3d at 1193 (quoting *Sparks v. Phillips & Cohen Assocs., Ltd.*, 641 F. Supp. 2d 1234, 1248 (S.D. Ala. 2008)) (internal marks and citations omitted).

The Bankruptcy Court correctly recognized that the Seventh Circuit Court of Appeals, in interpreting § 1692e, has held that "[i]f a statement would not mislead

---

[8] Mr. Ellswick also cites § 1692f as a basis for his FDCPA claim against Quantum. Section 1692f prohibits "unfair or unconscionable means to collect . . . any debt."

the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense." (Doc. 3-7, pp. 8-9) (quoting *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009)). Be that as it may, the Eleventh Circuit Court of Appeals, whose published opinions are binding in this circuit, has held that "[t]he use of 'or' in § 1692e means that, to violate the FDCPA, a representation . . . must merely be false, *or* deceptive, *or* misleading. A false representation in connection with the collection of a debt is sufficient to violate the FDCPA facially, *even where no misleading or deception is claimed*." *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012) (emphasis added).

In *Bourff*, the defendant law firm sent to the plaintiff a collection notice identifying as the creditor an entity that did not meet the definition of a "creditor" under the FDCPA. In dismissing the plaintiff's FDCPA claim under § 1692e, the district court held that even if the entity identified was not a creditor, "the error in listing it as such was a harmless mistake in the use of the term because [the entity] had the power to foreclose on the property or otherwise to act as the creditor on the loan." *Bourff*, 674 F.3d at 1240 (record citation omitted). The Eleventh Circuit disagreed, holding that the false identification alone was an actionable false representation under § 1692e. *Bourff*, 674 F.3d at 1241.

Although the Eleventh Circuit did not use the term "material" in describing the false representation in *Bourff*, the Eleventh Circuit did state that "the

identity of the 'creditor' in these [debt collection] notices is a serious matter" and explained that the FDCPA defines the term "creditor." 674 F.3d at 1241.[9] Because the plaintiff adequately alleged in his complaint that the defendant provided false information about the creditor's identity in a collection notice, the Eleventh Circuit reversed the district court order dismissing the FDCPA action, stating, "[t]he complaint on its face, taken as true and viewed in the light most favorable to Plaintiff, states a claim upon which relief may be granted under the FDCPA." *Bourff*, 674 F.3d at 1241.

The Eleventh Circuit did not require the plaintiff in *Bourff* to allege, in addition to the false representation, that the false information misled or deceived him.[10] That is because an objectively false statement is just that – false, and a debt collector violates § 1692e, and § 1692e(A)(2) in particular, when the collector makes a false representation to advance collection efforts. By including within § 1692e's ambit not only objectively false statements or means but also misleading

---

[9] The FDCPA also affirmatively requires a debt collector to properly identify a creditor in a debt collection notice. 15 U.S.C. § 1692g(a)(2).

[10] *See also Shoup v. McCurdy & Candler, LLC*, 465 Fed. Appx. 882, 884-85 (11th Cir. 2012) (reversing dismissal of FDCPA action on the basis of *Bourff* where the plaintiff alleged that a law firm identified as a creditor was an entity that could not be a "creditor" under the FDCPA); *Motes v. Midland Funding, LLC*, 233 F. Supp. 3d 1256, 1266 (N.D. Ala. 2017) (citing the *Bourff* rule that "[a] false representation in connection with the collection of a debt is sufficient . . . even where no misleading or deception is claimed" and holding that a genuine issue of material fact existed as to whether the defendant falsely identified the amount of debt and the identity of the creditor at the summary judgment stage). Because it is an unpublished opinion, *Shoup* is not binding authority even though it is an Eleventh Circuit panel decision. The district court decided *Motes* after the Bankruptcy Court issued its order dismissing Mr. Ellswick's adversary proceeding.

14

and deceptive representations or means, Congress recognized that a debt collector may present accurate information in a manner that deceives or misleads, and truthful but misleading or deceptive information, like false information, violates § 1692e. The least sophisticated consumer standard provides the threshold for liability when a claim under § 1692e is based on an allegation that technically accurate information is misleading or deceptive. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175-77 (11th Cir. 1985) (adopting the least sophisticated consumer standard to analyze whether a letter was deceptive under the FDCPA); s*ee also Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014) ("[W]e have adopted a least-sophisticated consumer standard to evaluate whether a debt collector's conduct is deceptive, misleading, unconscionable, or unfair under the statute.") (internal quotation marks and citation omitted).

*Leonard v. Zwicker & Assocs., P.C.*, --- Fed. Appx. ---, 2017 WL 4979160 (11th Cir. Nov. 1, 2017), a recent unpublished decision from the Eleventh Circuit, illustrates the distinction between false and misleading information in a collection notice. In *Leonard*, the plaintiff alleged that in a collection letter, the defendant inaccurately identified the creditor as "American Express" when the "actual creditor" was either "American Express Centurion Bank" or "American Express Receivable Financing Corporation III LLC." 2017 WL 4979160 at *1. The plaintiff also alleged that the use of "American Express" was confusing because

there were more than 50 entities in Florida whose names included American Express, and "'American Express' was a trademark owned by an entity that did not issue credit cards."  2017 WL 4979160 at *1.  The district court dismissed the action, finding that the defendant "adequately identified the name of the creditor and that the communication was not misleading."  2017 WL 4979160 at *1.  The Eleventh Circuit affirmed the dismissal.

The Eleventh Circuit began its analysis by explaining that the defendant's use of "American Express" to identify the creditor was not false.

> Zwicker clearly identified "American Express" as the name of the creditor.  Its use of "American Express," instead of the full business name "American Express Centurion Bank" or "American Express Receivables Financing Corporation III, LLC," provides accurate information to the consumer about the creditor's identity.  "American Express" is the name under which the financial-services company usually transacts business, and the company is commonly referred to by that name.  That identification was not technically "false," any more than a commonly used nickname could be considered a "false" identification of a person.

2017 WL 4979160 at *4.  Because the information was not false, the Eleventh Circuit considered whether the information, though accurate, was misleading.  Applying the least sophisticated consumer test, the Eleventh Circuit held that the least sophisticated consumer would not have been misled or confused by the defendant's use of "American Express" as opposed to the company's full name because "[a] naïve consumer, who is unfamiliar with the internal corporate

structure of the American Express Company would be no more confused as to the identity of the creditor by the commonly used 'American Express' than by the full business names 'American Express Centurion Bank' or 'American Express Receivable Financing Corporation III, LLC.'" 2017 WL 4979160 at *5.

Under binding Eleventh Circuit precedent then, the Bankruptcy Court applied the incorrect standard when the Court held that in addition to alleging a false representation (or perhaps, more accurately, a false means), Mr. Ellswick had to allege "under the standard of a reasonable but least-sophisticated consumer" how he was misled or confused by Quantum's submission of a Rule 3001form for open-end debts and Quantum's omission of the contract required for submission of proof of claims of closed-end debts. (Doc. 3-7, p. 8). Pursuant to *Bourff*, Mr. Ellswick may state a claim under § 1692e by alleging only a false representation of a material fact.

Relying on the Supreme Court's recent holding in *Midland Funding, LLC v. Johnson*, 137 S.Ct. 1407 (2017), a decision that was not available to the Bankruptcy Court when the Court dismissed Mr. Ellswick's claim, Quantum argues persuasively that the least sophisticated consumer test does not apply to Mr. Ellswick's claim for the additional reason that "the materiality of Quantum's inclusion of the Rule 3001(c)(3)(A) Disclosures should be judged" from "the perspective of its audience," and "'[t]he audience in Chapter 13 bankruptcy cases

includes a trustee, 11 U.S.C. § 1302(a), who must examine proofs of claim and, where appropriate, pose an objection, §§ 704(a)(5), 1302(b)(1) (including any timeliness objection, §§ 502(b)(1), 558).'" (Doc. 8, p. 26) (quoting *Johnson*, 137 S.Ct. at 1413). Indeed, Mr. Ellswick does not allege that Quantum made a false representation to him but that Quantum made "a false representation to this Court." (Doc. 3-18, p. 3, ¶ 10; *see also* Doc. 3-18, pp. 1, 3, ¶¶ 2, 14).[11] The Court agrees that materiality should be evaluated from the perspective of the bankruptcy trustee rather than the consumer under the particular circumstances of this case.

The *Johnson* opinion suggests that the Bankruptcy Court also was mistaken when the Court adopted Quantum's argument that "Quantum's proof of claim 'does not misrepresent the nature or effect' of the underlying debt." (Doc. 3-7, p. 6) (quoting *Miljkovic*, 791 F.3d at 1306). Quantum's proof of claim was objectively false and misrepresented the nature or character of the claim and the legal status of the claim because Quantum asserted a claim for a void debt.[12] As the Supreme Court stated in *Johnson*, "[a] 'claim' is a 'right to payment,'" and

---

[11] Quoting *Miljkovic*, Mr. Ellswick alleges that "the FDCPA applies 'even when the audience for such conduct is someone other than the consumer.'" (Doc. 3-18, p. 3, ¶ 17) (quoting *Miljkovic*, 791 F.3d at 1297).

[12] As the Bankruptcy Court noted, Mr. Ellswick objected to Quantum's proof of claim, and Quantum withdrew the claim after the parties submitted Mr. Ellswick's objection to an arbitrator. In support of his objection, Mr. Ellswick argued that the loan was unenforceable under Ala. Code § 5-18A-13(k) because the loan contract stated that the "debtor was giving creditor a security interest in debtor's check." (Doc. 3-16, p. 1, ¶ 1.a).

"[s]tate law usually determines whether a person has such a right." 137 S.Ct. at 1411. As in *Johnson*, the "relevant law is the law of Alabama." 137 S.Ct. at 1411.

Under Alabama law, a void debt has no legal effect. *See Macon Cty. Greyhound Park, Inc. v. Hoffman*, 226 So. 3d 152, 161 (Ala. 2016) ("[A] void contract is the same as a nonexistent contract."); *In re Cox*, 214 B.R. 635, 649 (Bankr. N.D. Ala. 1997) ("[T]he lien . . . will be . . . void and no longer of any legal force or effect."). Under Alabama law, "the general rule is that when a contract is void, it does not have any existence even for the protection of one who relied and acted upon it without notice of its infirmity . . . ." *Metro. Life Ins. Co. v. Bramlett*, 140 So. 752, 753 (Ala. 1932); *see Derico v. Duncan*, 410 So. 2d 27, 31 (Ala. 1982) ("[A]s we have always held to be the law in Alabama, whenever regulation and protection are the goal of a statute, contracts made in derogation of that statute are null, void, and unenforceable.").

Under Alabama law, a "void" contract is different from a "voidable" contract subject to an affirmative defense. *See, e.g., Hoffman*, 226 So. 3d at 161 (Ala. 2016) ("As distinguished from a voidable contract, a void contract is the same as a nonexistent contract.") (citing *Mason v. Acceptance Loan Co.*, 850 So. 2d 289, 295 (Ala. 2002)). *Johnson* stands for the proposition that a creditor does not violate the FDCPA by pursuing a stale claim because the statute of limitations is an affirmative defense that is subject to waiver, making the underlying debt

voidable, not void.

Here, Mr. Ellswick's debt was void under Alabama law, and Quantum had no right to pursue the claim because a creditor does not have a right to payment from a void debt. *See Cox*, 214 B.R. at 649. By submitting a proof of claim in Mr. Ellswick's Chapter 13 case, Quantum asserted that it had "a right to payment that is subject to disallowance." *Johnson*, 137 S.Ct. at 1413. This was objectively false. Quantum had no right to payment from a void debt. The debt was not subject to disallowance based on an affirmative defense. Rather, the debt was of no legal effect.

Mr. Ellswick alleges, somewhat inartfully and incompletely, that Quantum, by omitting from its proof of claim the required closed-end payday loan contract and attaching instead the paperwork for an open-end credit account, falsely represented to the Bankruptcy Court and the bankruptcy trustee the nature of the debt. That is, in addition to asserting to the Bankruptcy Court and the trustee that there was a right to payment of a void debt, by its conduct, Quantum falsely asserted that the loan was an open-end debt rather than a closed-end debt. The nature of the debt presumably would be material to the Bankruptcy Court and the trustee if Quantum was attempting to deplete the bankruptcy estate by collecting on a void debt.

Because the Bankruptcy Court did not have the opportunity to consider the

precedent discussed above, and the parties have not briefed these issues before the Bankruptcy Court, this Court will vacate the order dismissing Mr. Ellswick's claim and remand this case for further proceedings, mindful of the fact that Rule 15 of the Federal Rules of Civil Procedure applies to adversary proceedings. Fed. R. Bankr. P. 7015.

### B. Motion to Compel Arbitration of the Adversary Proceeding

Next, Mr. Ellswick argues that the Bankruptcy Court erred in denying his motion to compel arbitration by finding that he waived his right to arbitration and that arbitration would conflict with the underlying purposes of the Bankruptcy Code.

The Court examines whether Mr. Ellswick waived his right to arbitration "with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A party waives the right to arbitrate when it "substantially participates in litigation to a point inconsistent with an intent to arbitrate and . . . this participation results in prejudice to the opposing party." *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (citing *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir.1995)) (internal quotation marks omitted). Arbitration results in prejudice to the opposing party when the opposing party "undergo[es] the types of litigation expenses that arbitration was designed to

alleviate." *In re Checking*, 754 F.3d at 1294 (citing *Morewitz*, 62 F.3d at 1366) (alteration in original) (internal quotation marks omitted).

In denying Mr. Ellswick's motion to compel arbitration, the Bankruptcy Court found that "by filing the AP and engaging in litigation activities, including opposing the motion to dismiss on the merits, participating in a hearing on the motion to dismiss and in a status conference where contested issues were in play, and briefing the motion to dismiss—all before moving to compel arbitration— [Mr.] Ellswick waived the right to compel arbitration of the claims asserted in the AP." (Doc. 1-3, p. 5). This Court agrees.

With respect to his adversary proceeding, Mr. Ellswick could have invoked the mandatory arbitration provision pursuant to the written credit agreement at any time. In addition, Mr. Ellswick could have initiated his complaint in arbitration. Instead, he willingly chose the bankruptcy court forum. *Compare Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1351 (11th Cir. 2017) (a party did not waive the right to arbitrate despite litigation activities because the court ordered the party to litigate).

Moreover, although a party does not necessarily waive the right to arbitrate by delaying a request for arbitration, Mr. Ellswick waited four months after filing his adversary proceeding to request arbitration. Mr. Ellswick did not have to wait for the right to accrue or surmount some procedural hurdle before invoking the

arbitration provision. *Compare Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1316 (11th Cir. 2002) (a party did not waive the right to arbitrate because it substantially participated in litigation only against a party not bound by the arbitration provision); *Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437, 1440 (11th Cir. 1986) (a party did not waive the right to arbitrate after two and a half years of litigation because the right to arbitrate did not accrue until that time).

Mr. Ellswick contends that he participated in litigation only to fairly defend against the motion to dismiss, such that his activities were reactionary and do not represent a lack of intent to arbitrate. (Doc. 4, pp. 17, 25-26). The Court is not persuaded. Mr. Ellswick could have pursued his claim against Quantum in arbitration, and he could have raised, acknowledged, or reserved the right to arbitrate in any of his responses to Quantum's motion to dismiss and still preserved the ability to defend his claims.

Mr. Ellswick argues that "[d]iscovery is the more important element of waiver," and since the parties did not engage in discovery, he did not waive his right to arbitrate. (Doc. 4, pp. 24-25). While discovery is an important factor for the Court to consider, the paramount issue remains Mr. Ellswick's intent. Mr. Ellswick had the opportunity to compel arbitration at the outset of his adversary proceeding, in his response to the motion to dismiss, in his supplemental response to the motion to dismiss, at the hearing on the motion to dismiss, in response to

Quantum's reply in support of the motion to dismiss, at the parties' status conference, or at any other time over the course of four months. All of these actions considered together demonstrate that Mr. Ellswick did not intend to arbitrate.

Furthermore, the Bankruptcy Court properly found that arbitration would prejudice Quantum because "[Mr.] Ellswick's actions before he sought arbitration required Quantum to expend resources preparing for and participating in court hearings, and in the preparation of pleading and briefs in support of its motion to dismiss." (Doc. 1-3, p. 5). Indeed, Quantum would be prejudiced by arbitration. "Substantially invoking the litigation machinery qualifies as the kind of prejudice . . . that is the essence of waiver." *In re Checking*, 754 F.3d at 1295 (internal quotation marks omitted). By initiating his adversary proceeding in court and engaging in litigation for four months, Mr. Ellswick deprived Quantum of the "streamlined proceedings" an agreement to arbitrate is designed to achieve. *In re Checking*, 754 F.3d at 1295. Consequently, Quantum expended "precisely the kind of litigation costs that the [arbitration] provision intended to alleviate." *In re Checking*, 754 F.3d at 1296. "By slowing the process and magnifying [Quantum's] costs, [Mr. Ellswick's] delay undermined the purpose of the . . . 'liberal federal policy favoring arbitration agreements.'" *In re Checking*, 754 F.3d at 1296 (quoting *Moses H. Cone*, 460 U.S. at 24).

Having found that Mr. Ellswick substantially participated in litigation to a point inconsistent with an intent to arbitrate and prejudicial to Quantum, the Court agrees with the Bankruptcy Court that Mr. Ellswick waived his right to arbitrate. Accordingly, the Court affirms the Bankruptcy Court's order denying Mr. Ellswick's motion to compel arbitration.[13]

## IV. CONCLUSION

Based on the foregoing, the Court **VACATES** and **REMANDS** for further proceedings the Bankruptcy Court's November 23, 2016 order granting Quantum's motion to dismiss the adversary proceeding. The Court **AFFIRMS** the Bankruptcy Court's June 24, 2016 order denying Mr. Ellswick's motion to compel arbitration.

**DONE** and **ORDERED** this March 21, 2018.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[13] Because the Bankruptcy Court properly denied Mr. Ellswick's motion to compel arbitration on the grounds of waiver, this Court does not address the Bankruptcy Court's alternative grounds for denying the motion based on an inherent conflict between arbitration and the Bankruptcy Code.